IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNIE JUNIOR PEREZ,

        Plaintiff,

                             2:14-CV-380-PK

                             OPINION AND ORDER

v.


COLETTE PETERS, MARK NOOTH, RANDY
GEER, MICHAEL CLEMENTS, KALLEE
EVANS, CHRIS SHUPE, J. DOE, and LORI
SCHULTZ,

        Defendants.

PAPAK, Magistrate Judge:

      Plaintiff *pro se* Ernie Junior Perez, an incarcerated prisoner, filed this action *in forma pauperis* against defendants Colette Peters, Mark Nooth, Randy Geer, Michale Clements, Kallee Evans, Chris Shupe, John or Jane Doe, and Lori Schultz on March 6, 2014.  Perez amended his

Page 1 - OPINION AND ORDER

complaint effective July 31, 2014. By and through his amended complaint, Perez alleged the

defendants' liability pursuant to 42 U.S.C. § 1983 for the violation of his free speech rights under

the First Amendment and, in a separately pled claim, under Section 1983 for the violation of his

due process rights under the Fourteenth Amendment. By and through his First Amendment

claim, Perez raised both facial and as-applied challenges to various specifically identified

regulations promulgated by the Oregon Department of Corrections ("ODOC"), and by and

through his Fourteenth Amendment claim, Perez challenged the adequacy of the available

procedures for challenging the application of those regulations to him within the institution

where he was housed. On May 27, 2015, I dismissed Perez' facial challenge to the identified

regulations, other than his facial challenge to O.A.R. 291-131-0025(11)(b)(D), with prejudice.

Now before the court are Perez' motion (#90) for leave to substitute a party, motion (#91)

for leave to amend his pleading, styled as his "Second Motion for Leave to File Supplemental

Complaint," motion (#102) for leave to amend his pleading, styled as his "Third Motion for

Leave to File Supplemental Complaint," motion (#103) for imposition of sanctions pursuant to

Federal Civil Procedure Rule 56(h), motion (#104) for imposition of sanctions pursuant to

Federal Civil Procedure Rule 26(g)(3), and motion (#108) for reconsideration of certain

dispositions effected by and through my order of May 27, 2015.[1] I have considered the motions,

oral argument on behalf of the parties in connection with Perez' motions (#103, 104) for

imposition of sanctions only, and all of the pleadings and papers on file. For the reasons set forth

below, the motion (#90) for leave to substitute a party is granted, the motion (#91) for leave to

---

[1] Also pending at this time are defendants' motion (#87) for summary judgment and Perez' cross-motion (#101) for summary judgment. The parties' dispositive motions will be addressed in a separate order.

amend his pleading is denied as moot, the motion (#102) for leave to amend is granted as

discussed below, the motion (#103) for imposition of sanctions pursuant to Federal Civil

Procedure Rule 56(h) is granted as discussed below, the motion (#104) for imposition of

sanctions pursuant to Federal Civil Procedure Rule 26(g)(3) is granted as discussed below, and

the motion (#108) for reconsideration is denied in part as moot and in remaining part on its

merits.

## LEGAL STANDARD

### I.   Substitution of Parties

Pursuant to Federal Civil Procedure Rule 25(d):

> An action does not abate when a public officer who is a party in an official
> capacity dies, resigns, or otherwise ceases to hold office while the action is
> pending. The officer's successor is automatically substituted as a party. Later
> proceedings should be in the substituted party's name, but any misnomer not
> affecting the parties' substantial rights must be disregarded. The court may order
> substitution at any time, but the absence of such an order does not affect the
> substitution.

Fed. R. Civ. P. 25(d).

### II.   Leave to Amend a Pleading

After a party has filed a response to another party's pleading, the latter party "may amend

its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

15(a)(2). Federal Civil Procedure Rule 15 specifies that "[t]he court should freely give leave

when justice so requires." *Id.* The Ninth Circuit has specified that Rule 15 is to be interpreted

with "extreme liberality," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990), *citing*

*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), although leave to amend is

nevertheless "not to be granted automatically," *id.* The district court's discretion to deny a motion

for leave to amend is particularly broad where the court has already given the plaintiffs one or

more opportunities to amend their complaint. *See, e.g.*, *Mir v. Fosburg*, 646 F.2d 342, 347 (9th

Cir. 1980).

## III.    Sanctions

### A.    Sanctions Pursuant to Federal Civil Procedure Rule 56(h)

Federal Civil Procedure Rule 56(h) provides in relevant part as follows:

> If satisfied that an affidavit or declaration [filed in support of or in opposition to a
> motion for summary judgment] is submitted in bad faith . . . , the court — after
> notice and a reasonable time to respond — may order the submitting party to pay
> the other party the reasonable expenses, including attorney's fees, it incurred as a
> result.  An offending party or attorney may also be held in contempt or subjected
> to other appropriate sanctions.

Fed. R. Civ. P. 56(h).  "Bad faith in the context of Rule 56(h) requires a deliberate or knowing

act for an improper purpose." *Raher v. Fed. Bureau of Prisons*, Case No. 09-CV-526-ST, 2011

U.S. Dist. LEXIS 117725, *22 (D. Or. Oct. 12, 2011).

### B.    Sanctions Pursuant to Federal Civil Procedure Rule 26(g)(3)

Federal Civil Procedure Rule 26(g) provides in relevant part as follows:

(1)    Signature Required; Effect of Signature.  Every . . . discovery . . .
       response. . . or objection must be signed by at least one attorney of record
       in the attorney's own name. . . .  By signing, an attorney . . . certifies that to
       the best of the person's knowledge, information, and belief formed after a
       reasonable inquiry:

        * * *

        (B)    with respect to a discovery . . . response. . . or objection, it
            is:

                (i)    consistent with these rules and warranted by
                     existing law or by a nonfrivolous argument for
                     extending, modifying, or reversing existing law, or

for establishing new law; [and]

(ii)    not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. . . .

\* \* \*

\* \* \*

(3)    Sanction for Improper Certification.  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g).

The courts of the Ninth Circuit apply "an objective standard to determine whether a party or attorney has responded or objected to a discovery request for an improper purpose." *Oregon RSA No. 6 v. Castle Rock Cellular Ltd. Partnership*, 76 F.3d 1003, 1007 (9th Cir. 1996), *citing Zimmerman v. Bishop Estate*, 25 F.3d 784, 790 (9th Cir. 1993).  There is no requirement that the court find that the party to be sanctioned pursuant to Rule 26(g)(3) acted in bad faith.  *See id.* at 1007-1008.

C.    **Sanctions Pursuant to the Court's Inherent Power**

District courts have the inherent power to issue sanctions against a party or lawyer for a "full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  "Such "inherent power . . . can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49.  Imposition of any sanction pursuant to the court's inherent power requires a finding of subjective bad faith following sufficient notice to the party to be sanctioned and an opportunity for a hearing on the record. *See United States v. Stoneberger*, 805 F.2d 1391, 1393

(9th Cir. 1986), *quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). A finding of

bad faith is warranted for purposes of inherent-power sanctions where an attorney "knowingly or

recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing

an opponent." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001), *quoting Primus Auto. Fin.

Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). The range of litigation abuses that

may justify imposition of sanctions pursuant to the court's inherent power includes, *inter alia*,

willful abuse of the judicial process and improperly motivated action. *See Roadway*, 447 U.S. at

766. The district courts enjoy "wide discretion in crafting a sanctions award" pursuant to their

inherent authority. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 n. 12 (9th Cir.

2012).

## IV.    Reconsideration

Federal Civil Procedure Rule 59(e) provides statutory authority for the district courts to

consider a party's motion to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e). Such a motion

may appropriately be granted where "the district court (1) is presented with newly discovered

evidence [or] (2) committed clear error or the initial decision was manifestly unjust, or (3)

[where] there is an intervening change in controlling law." *Id.* at 1263. However, "[t]here may

also be other, highly unusual, circumstances warranting reconsideration in addition to the

foregoing." *Id.*

## MATERIAL FACTS

## I.    The Parties

Plaintiff Perez is, and at all material times was, an incarcerated prisoner of ODOC housed

at the Snake River Correctional Institution ("SRCI"). Defendant Peters is, and at all material

Page 6 - OPINION AND ORDER

times was, the director of ODOC. Defendant Nooth is, and at all material times was, the superintendent of SRCI. Defendant Geer was at all material times until approximately March 2014 the central mail administrator at SRCI. Defendant Clements is, and at all material times was, a correctional lieutenant at SRCI charged with review of challenged institutional decisions to withhold mail from inmates. Defendant Schultz is, and at all material times was, a clerical employee at SRCI charged with responding to inmate kytes and with review of challenged institutional decisions to withhold publications from inmates. Defendant Evans is, and at all material times was, a clerical employee at SRCI charged with inspecting incoming inmate mail. Defendant Shupe is, and at all material times was, a clerical employee at SRCI charged with inspecting publications sent to inmates through the mail. The Doe defendant is a clerical employee at SRCI charged with inspecting incoming inmate mail and/or publications.

## II.    The Parties' Dispute[2]

Perez' First Amendment claim arises out of defendants' conduct in rejecting his incoming mail on five occasions and in rejecting publications sent to him through the mail on three occasions, and in promulgating and enforcing the administrative regulations pursuant to which his mail and publications were rejected. Perez' Fourteenth Amendment claim arises out of the administrative process he received in connection with his requests for administrative review of the eight rejections.

### A.    Rejected Mail and Related Administrative Process

On August 29, September 5, 10, and 17, and October 2, 2013, defendant Evans inspected

---

[2] The following recitation constitutes my construal of the evidentiary record created by the parties, which is undisputed except as otherwise indicated below.

incoming mail to plaintiff Perez from his correspondent Jane Aston. On each of those occasions, Evans rejected the mail on the grounds that it contained "[s]exually explicit" content and that "[s]exually explicit material is prohibited." Declaration (#88) of Stephen Cook ("Cook Decl. I"), dated June 8, 2015, Exhs. 2, 4, 6, 8, 10; Amended Complaint, Exh. 2-A. On each of those occasions, Evans sent Perez a "Mail Violation Notice" so advising him, and additionally advising him that the rejected incoming mail was from Aston and that administrative review of the rejection was available to him. *See* Cook Decl. I, Exhs. 2, 4, 6, 8, 10. *In camera* review of the rejected mail establishes that each rejected letter (some of which were sent together with photographs of clothed women, purportedly of Aston and her aunt; in one of the photographs the undergarments of one of the women are visible) contained sexually explicit content (*i.e.*, prose descriptions of masturbation, sexual arousal, and one instance of incestuous sexual activity) as indicated by Evans in the five notices. *See* Cook Decl. I, Exhs. 3, 5, 7, 9, 11 (each cited exhibit filed under seal). Perez does not dispute that each rejected piece of mail contained sexually explicit content.

On August 30, 2013, Perez requested administrative view of the mail rejection of August 29, 2013, identifying the rejection at issue by date but not by notice number, and addressing his request to Evans. *See* Amended Complaint, Exh. 2-B. On September 8, 2013, defendant Schultz responded to Perez' request by directing him to identify the rejection by notice number and to address the request with the notice number to defendant Clements. *See id.* It appears that on or around September 9, 2013, Perez requested administrative review of the mail rejections of August 29 and September 5, 2013, identifying each rejection by notice number and addressing his request to Clements. *See* Amended Complaint, ¶ 48. On September 19, 2013, Clements

afforded Perez an opportunity to review the mail rejected on August 29 and September 5, 2013,

and Perez availed himself of that opportunity. *See* Cook Decl. I, Exh. 12 at 2.  On September 20,

2013, Perez sent Clements a kyte stating as follows:

> You allowed me to review the rejected materials yesterday for [the rejections of
> August 29 and September 5, 2013].  [They] consisted of two black and white
> photocopies of photos and a letter.  I didn't get a chance to look because it was so
> close to count time.  I only caught glimpses of the materials.
>
> I don't think the rejected material was appropriately rejected because this material
> is not sexually violent or disturbing.  I'm not a sex offender so it poses no threat to
> my rehabilitation.  Sexually explicit material should not be rejected solely because
> it is sexually explicit.
>
> Again, I didn't get a close look at the photos but the photos weren't even sexually
> explicit.  It didn't look like her panties were see-through and if they were what I
> said above applies.

Amended Complaint, Exh. 2-D.  On September 30, 2013, Clements affirmed that the mail was in

violation of O.A.R. 291-131-0035(1) (prohibiting inmates from receiving mail containing

sexually explicit content), upholding each rejection.  *See* Cook Decl. I, Exh. 12 at 2.

It further appears that at some time in early October 2013, Perez requested administrative

review of the mail rejections of September 10, September 17, and October 2, 2013, identifying

each rejection by notice number and addressing his request to Clements.  *See* Amended

Complaint, ¶¶ 58-59.  On October 22, 2013, Clements afforded Perez an opportunity to review

the mail rejected on September 10, September 17, and October 2, 2013, and Perez availed

himself of that opportunity.  *See* Cook Decl. I, Exh. 12 at 1.  It appears that on that same day,

Perez sent Clements a kyte stating his grounds for believing that the rejections were improper.

*See* Amended Complaint, ¶ 60.  On October 30, 2013, Clements affirmed that the mail was in

violation of O.A.R. 291-131-0035(1), upholding each rejection.  *See* Cook Decl. I, Exh. 12 at 1.

Page 9 - OPINION AND ORDER

## B.    Rejected Publications and Related Administrative Process

On September 6, 9, and 12, 2013, defendant Shupe inspected publications sent to Perez

through the mail (respectively, the three publications at issue were entitled *Girls on Top*, *Letters*

*to Penthouse XV*, and *Letters to Penthouse XII*). *See* Amended Complaint, Exhs. 2-F, 2-G, 2-H;

*see also* Cook Decl. I, Exh. 13.[3]  On each of those occasions, Shupe rejected the publication on

the grounds that it contained "material that threatens or is detrimental to the security, safety,

health, good order, or discipline of the facility, inmate rehabilitation or facilitates criminal

activity." Amended Complaint, Exhs. 2-F, 2-G, 2-H.  In consequence, on each of those

occasions Shupe sent Perez a "Publication Violation Notice" so advising him. *See id.  In camera*

review of representative excerpts of the three publications establishes that each rejected

publication contained sexually explicit content (*i.e.*, prose descriptions of wildly implausible

sexual activity, in some instances nonconsensual sexual activity) but no other content with any

evident potential to threaten or impair inmate rehabilitation or institutional security, safety,

health, order, or discipline, and no other content with any evident potential to facilitate criminal

activity.  *See* Cook Decl. I, Exhs. 15-17 (each cited exhibit filed under seal).  Perez does not

dispute that each rejected publication contained sexually explicit content.

---

[3] As will be discussed in greater detail below, Perez' evidentiary proffer of the
Publication Violation Notices issued to him on September 6, 9, and 12, 2013, differs significantly
from defendants' evidentiary proffer regarding those same exhibits.  Because defendants now
concede that Perez attached true and accurate copies of the Publication Violation Notices issued
to him on September 6, 9, and 12, 2013, as Exhibits Nos. 2-F, 2-G, and 2-H to his complaint, and
that the versions of those same notices proffered by defendants in support of their motion for
summary judgment have been altered, *see* Defendants' Response (#115) in Opposition to
Plaintiff's Motion for Imposition of Rule 56(h) Sanctions at 2-3, *see also* Declaration (#116) of
Stephen Cook ("Cook Decl. II"), ¶¶ 4-8, I rely herein for purposes of determining the facts
underlying Perez' claims exclusively on the versions proffered by Perez.

On September 25, 2013, by and through three separate kytes addressed to Clements,

Perez requested administrative view of the publication rejections of September 6, 9, and 12,

2013, identifying each rejection by date and by notice number. *See* Cook Decl. I, Exh. 14.  It

appears that, having received no response to his kytes, Perez inquired as to the status of his

requests for administrative review on two occasions on or around October 7 and 20, 2013, and

that, on or around October 22, 2013, Schultz responded that administrative reviews could take up

to 45 days to conduct and that SRCI mail room personnel had not been successful in searching

for scanned copies of the publications or of excerpts thereof. *See* Amended Complaint, ¶¶ 80-81.

On October 30, 2013, Schultz advised Perez through three separate kytes that the SRCI mail

room had failed to keep copies on file of scanned copies of any portions of any of the three

rejected publications, variously characterizing the failure as "accident[]" and as "error."  Cook

Decl. I, Exh. 14.  Schultz suggested that Perez re-order the materials, impliedly at his own

expense, so that they might be rejected again (if rejection was appropriate) and properly scanned

for purposes of facilitating administrative review. *See id.*  Perez received no further

administrative process in connection with any of the three publication rejections.

## IV.    Material Procedural Background

As noted above, Perez filed this action *in forma pauperis* on March 6, 2014, and amended

his complaint effective July 31, 2014.  By and through his amended complaint, Perez alleged the

defendants' liability pursuant to 42 U.S.C. § 1983 (i) for the violation of his free speech rights

under the First Amendment, raising both facial and as-applied challenges to various specifically

identified ODOC regulations governing the content of inmate mail and challenging the

foredescribed rejections of his mail and publications, and (ii) for the violation of his due process

rights under the Fourteenth Amendment, raising both facial and as-applied challenges to various specifically identified ODOC regulations governing administrative review of mail and publication rejections and challenging the adequacy of the administrative review he received in connection with the foredescribed rejections. Perez attached as exhibits to both his original and his amended complaints the three Publication Violation Notices issued by defendant Shupe on September 6, 9, and 12, 2013.

In or around March 2014, defendant Geer retired from service as the central mail administrator at SRCI. Kelly Raths replaced him in that position.

Early in the course of this litigation, Perez began serving defendants with discovery requests. At some time in or around early August 2014, defendants produced to Perez, in response to one or more of his discovery requests, the versions of the publication violation notices that defendants subsequently offered into evidence as Exhibit No. 13 to the Declaration (#88) of Stephen Cook (Cook Decl. I). The versions of the notices produced by defendants to Perez in discovery differed in at least six respects from the Publication Violation Notices that actually issued to Perez on September 6, 9, and 12, 2013. Specifically, (i) whereas the issued versions of the notices each identified defendant Chris Shupe (designated as "SHUPEC") as the staff member who issued the notice, defendants' produced versions each identified a staff member designated as "SPANGS" as the person who issued the notice, (ii) whereas the issued versions of the notices each indicated that the rejection was solely due to the rejected publication's contents constituting "material that threatens or is detrimental to the security, safety, health, good order, or discipline of the facility, inmate rehabilitation or facilitates criminal activity," defendants' produced versions each indicated that the rejection was additionally due to

Page 12 - OPINION AND ORDER

the rejected publication's contents constituting "sexually explicit material," (iii) whereas the issued versions of the notices each identified Perez' bunk assignment as 2B33A, defendants' produced versions each identified Perez' bunk assignment as 2B27B, (iv) whereas the issued versions of the notices each indicated the date upon which the notice issued, defendants' produced versions lacked any indication of the date of issuance, (v) the issued and produced versions of the notice of September 11, 2013, list different addresses for the sender of the publication at issue, and (vi) whereas the issued versions of the notices each included no indication of the procedure to be followed by inmates seeking administrative review of the rejection, defendants' produced versions each expressly purported to indicate that inmates could request administrative review "by sending an inmate communication to L. Schultz at box M04." Amended Complaint, Exhs. 2-F, 2-G, 2-H; Cook Decl. I, Exh. 13. Noting the differences between the issued and the produced versions of the notices, including in particular the identification of "SPANGS" as the issuing staff member on each of the produced versions, Perez served defendants' with follow-up discovery requests on or around August 19, 2014, seeking identification (*inter alia*) of SRCI staff members, other than defendants Schultz, Evans, and Shupe, who issued any of the five foredescribed mail rejections and three foredescribed publication rejections.

On August 21, 2014, defendants moved for dismissal of all of Perez' claims to the extent they constituted facial challenges to ODOC regulations, and additionally of all of Perez' claims to the extent brought against defendants Peters and Nooth.

On September 22, 2014, defendants served Perez with a response to his discovery requests of August 19, 2014, asserting that Perez' request for identification of the SRCI staff

Page 13 - OPINION AND ORDER

members who issued the eight rejection notices at issue in this litigation was "vague, overbroad, irrelevant, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence," and on that basis refusing to provide the requested information. On or around September 29, 2014, Perez served defendants with additional follow-up discovery requests specifically seeking, *inter alia*, the full name and title of the staff member designated as "SPANGS" on defendants' produced versions of the three publication violation notices. On or around October 27, 2014, Perez served defendants with further follow-up discovery requests specifically seeking, *inter alia*, a response to an interrogatory as to whether any inmate had ever obtained reversal in whole or in part of a mail or publication rejection through the administrative review process at SRCI. On November 25, 2014, defendants responded that no staff member designated as "SPANGS" was employed at SRCI, and refused to respond to the inquiry regarding successful completion of the administrative review process.

On December 22, 2014, Perez moved to compel further responses to the foredescribed discovery requests, among others. In connection with his motion to compel, Perez requested that the court impose monetary sanctions against defendants in the amount of $35, such requested sanction purportedly reflecting Perez' "costs" associated with preparing and filing his motion.

On April 6, 2015, Perez moved for leave to "supplement" his complaint to state, *inter alia*, additional bases for his Fourteenth Amendment claim, specifically in connection with defendants' maintenance of a "Publication Violation List" (the "PVL") nonexhaustively listing publications previously deemed violative of the ODOC rules governing publications inmates are permitted to receive through the mail. In support of his motion, Perez indicated that he had learned about the PVL only through discovery exchanged in connection with this action, when

Page 14 - OPINION AND ORDER

defendants advised him that they would not produce the PVL to him because it was accessible to him at the SRCI library. Perez further indicated that at some time in summer 2014 he had been able to "check out" a copy of the PVL, but that he had been unsuccessful in attempting to obtain or inspect a copy of the list at any time since.[4]

On May 27, 2015, I issued an order (#86) by and through which I dismissed Perez' facial challenge to the regulations identified in his amended complaint, other than his facial challenge to O.A.R. 291-131-0025(11)(b)(D), with prejudice, and otherwise denied defendants' motion to dismiss of August 21, 2014. By and through that same order, I additionally granted in part and denied in part Perez' foredescribed motion to compel discovery responses, *inter alia* directing defendants to identify the SRCI staff member designated as SPANGS and to produce to Perez "copies of any written policies, directives, or instructions to mail staff . . . concerning the processing of inmate mail at SRCI. . . ," denying the motion to compel as to the interrogatory regarding successful completion of the administrative review process, and denying Perez' request for imposition of a monetary sanction on the ground that, following my "cursory review" of defendants' discovery responses, it appeared to me that defendants were proceeding in good faith in the discovery process. Also by and through that same order, I denied Perez' motion for leave to supplement his complaint, in relevant part on the ground that Perez had known about the PVL for approximately 8-10 months without seeking leave to amend his complaint, and had no explanation for his delay in so doing.

At some unspecified time after Perez initiated these proceedings, defense counsel

---

[4] As discussed below, Perez only later become aware that the version of the PVL that he was once able to access at the SRCI library was incomplete and missing pertinent information.

provided excerpts of the publications *Girls on Top, Letters to Penthouse XV*, and *Letters to Penthouse XII* to Stephen Cook, the lead worker in the SRCI mail room. *See* Cook Decl. I, ¶¶ 23, 25, 27. At that time, Cook determined that each such excerpt contained sexually explicit content in violation of O.A.R. 291-131-0035(1).[5] *See id.*, ¶¶ 24, 26, 28. On June 15, 2015, defendants offered into evidence the excerpts of the three publications provided to Cook by defense counsel as sealed Exhibits Nos. 15, 16, and 17 to Cook's declaration in support of defendant's motion for summary judgment. *See* Cook Decl. I, ¶¶ 15, 16, 17 (each filed under seal).

Also on June 15, 2015, defendants advised Perez in writing, *inter alia*, that "Steve Spang (an Office Specialist II)" worked in the SRCI mailroom during the period when Perez received the mail and publication violation notices at issue in this action, and that "Mr. Spang is the person whose name appears on your three relevant publication violation notices." Motion (#104) for Sanctions, Exh. 4. It appears that at approximately this time defendants also produced to Perez a complete copy of the PVL,[6] apparently in response to my direction of May 27, 2015.

Also on June 15, 2015, defendants moved for summary judgment as to each of Perez' claims against them. In partial support of their motion, defendants offered the argument that defendant Shupe had had no involvement in the alleged deprivation of Perez' First Amendment

_____

[5] As noted above, the three publications were not originally rejected on the ground that they contained sexually explicit content but rather on the ground that they contained "material that threatens or is detrimental to the security, safety, health, good order or discipline of the facility, inmate rehabilitation, or facilitates criminal activity." For that reason, it is not clear in what sense Cook's determination that the publications contained sexually explicit content could be material to the claims or defenses at issue in this action.

[6] It was at this time that Perez first understood that he had never before seen a complete copy of the PVL.

rights. In support of that argument, defendants expressly asserted that "[t]he publication notices issued to plaintiff [on September 6, 9, and 12, 2013] were issued by ODOC staff named Spang, who is not named as a defendant in this lawsuit," citing to the versions of the three publication violation notices produced to Perez in discovery and subsequently attached as exhibits to Cook's declaration dated June 8, 2015 (Cook Decl. I). Defendants' Motion (#87) for Summary Judgment at 6; *see also id.* at 13, 14-15.

On July 24, 2015, Perez filed his motion (#103) for imposition of sanctions pursuant to Federal Civil Procedure Rule 56(h) and his motion (#104) for imposition of sanctions pursuant to Federal Civil Procedure Rule 26(g)(3). By and through his Rule 56(h) motion, Perez characterized the versions of the three Publication Violation Notices attached as Exhibit 13 to the Declaration (#88) of Stephen Cook (Cook Decl. I) as "forged documents" warranting the imposition of sanctions. By and through his Rule 26(g)(3) motion, Perez argued that, in light of defendants' advice of June 15, 2015, that "Mr. Spang is the person whose name appears on your three relevant publication violation notices," defendants' discovery responses of September 22 and November 25, 2014, were necessarily in bad faith and on that basis sanctionable, and that defendants' failure to provide the PVL at any earlier time was likewise in sanctionable bad faith. In connection with each motion for sanctions, Perez sought monetary sanctions in the amount of $100 reflecting his purported "costs and expenses," as well as such further sanctions as the court deemed appropriate.

Also on July 24, 2015, Perez filed a new motion (#102) for leave to amend his pleading, in part to name Spang as a defendant in lieu of Shupe, but also to add Raths as a defendant and to add further allegations in support of his claims.

Page 17 - OPINION AND ORDER

On August 14, 2015, defendants filed in support of their opposition to Perez' Rule 56(h)

motion the Declaration (#116) of Stephen Cook (Cook Decl. II) dated July 29, 2015, by and

through which Cook testified that the versions of the Publication Violation Notices attached as

exhibits to Perez' complaint are true and correct copies of the notices that actually issued to Perez

on September 6, 9, and 12, 2013, *see* Cook Decl. II, ¶ 3, and that the versions of the notivces

attached as Exhibit No. 13 to his own previous declaration dated June 8, 2015 (Cook Decl. I),

were *not* true and correct copies of the notices that actually issued to Perez but rather had been

generated and printed from an SRCI database following the addition of new and/or updated

information to that database, *see id.*, ¶4. Cook further testified that the field in that SRCI

database containing the staff member designation indicates not the staff member who originally

issued the notice but rather the staff member who most recently viewed the notice in the

database, *see id.*, ¶ 5, that whenever any notice is printed from the database archive other than at

the time the notice first issues, due to "a glitch in the database" the database adds the "Sexually

Explicit Material" ground for rejecting the publication, whether or not that ground was included

in the originally issued notice, *id.*, ¶ 7, and that the mismatch of sender addresses in connection

with the notice of September 11, 2013, reflects an update to the sender address made after the

notice originally issued, *see id.*, ¶ 8. Cook's declaration (#116) of July 29, 2015, is silent as to

why the versions of the notices printed from the database archive purport to contain advice as to

the mechanism for obtaining administrative review of publication rejections while the versions of

the notices actually issued to Perez contain no such advice. *See id.*, *passim.*

Three days later, on August 17, 2015, defendants' opposed Perez' motion for leave to

amend filed July 24, 2015 (by and through which Perez sought leave, *inter alia*, to name Spang

as a defendant in lieu of Shupe) in chief part on the ground that the motion was filed at too late a

stage of these proceedings. Defendants' opposition memorandum was silent regarding the fact

that defendants had on June 15, 2015, for the first time admitted that SRCI employed an office

specialist named Spang and for the first time advised Perez that Spang was the person who issued

his three Publication Violation Notices. The memorandum was likewise silent as to the fact that

also on June 15, 2015, defendants moved for summary adjudication of Perez' claims, arguing in

support thereof for the first time that Perez had erred in alleging Shupe's rather than Spang's

involvement in issuing the three notices.

Also on August 17, 2015, defendants filed a reply memorandum (#118) in support of

their motion (#87) for summary judgment. Notwithstanding Cook's testimony of July 29, 2015,

tending to establish that the Publication Violation Notices of September 6, 9, and 12, 2013, were

issued by Shupe rather than by Spang, defendants asserted to the court in the introductory

paragraphs of their reply memorandum that "[d]efendant[] Shupe w[as] not personally involved

in any violation of plaintiff's rights. . . ." Reply in Support of Defendants' Motion for Summary

Judgment at 2. Elsewhere in that same reply memorandum, defendants stated that they were

nevertheless withdrawing their "'personal involvement' argument" as to Shupe for the expressed

reason that "it is not possible to know with certainty that Steve Spang re[jected] plaintiff's

at-issue publications (although he was the most recent reviewer of the records as of the date that

defendants printed them for this litigation. . .)." *Id.* at 8.

The court conducted a hearing in connection with Perez' motions (#103, 104) for

imposition of sanctions on November 18, 2015. At the hearing, both sets of parties availed

themselves of the opportunity to offer oral argument in support of their respective positions.

During the course of the hearing, without conceding that either she or the defendants engaged in

any sanctionable conduct, counsel for defendants expressly took the position that, to the extent

the court finds imposition of sanctions to be warranted, sanctions should be imposed against

defense counsel and not against the defendants themselves, on the ground that counsel was

responsible for all of the conduct identified by Perez as potentially sanctionable. Also during the

course of the hearing, counsel expressly indicated defendants' willingness to stipulate that Perez

be permitted to amend his complaint as requested by and through his motion (#102) for leave to

amend his pleading filed July 24, 2015.

## ANALYSIS

**I.**     **Perez' Motion (#103) for Imposition Sanctions Pursuant to Federal Civil Procedure Rule 56(h); Perez' Motion (#104) for Imposition of Sanctions Pursuant to Federal Civil Procedure Rule 26(g)(3)**

In unpicking the Gordian knot of Perez' pending interrelated motions, I begin with Perez'

motions for imposition of sanctions. By and through his motion (#103) for imposition of Rule

56(h) sanctions, as discussed above, Perez characterizes the versions of the three publication

violation notices attached as Exhibit 13 to the Declaration (#88) of Stephen Cook (Cook Decl. I)

as "forged documents" warranting the imposition of sanctions. In connection with his motion for

Rule 56(h) sanctions, Perez seeks monetary sanctions in the amount of $100 reflecting his

purported "costs and expenses," as well as such further sanctions as the court deems appropriate.

Also as discussed above, in opposition to Perez' Rule 56(h) motion defendants offer the

Declaration (#116) of Stephen Cook (Cook Decl. II), which tends to establish that the versions of

the three notices constituting Exhibit 13 were neither forged nor consciously manufactured

specifically for this litigation, but rather reflect updates, alterations, and inadvertent artifacts

Page 20 - OPINION AND ORDER

made to or imposed upon the original notices subsequent to the time they issued.  On that basis,

defendants assert that Perez "has not shown, and cannot show, that defendants engaged in any

misconduct in this case," and that therefore "sanctions are not appropriate."

By and through his motion (#104) for imposition of 26(g)(3) sanctions, as discussed

above, Perez argues that in light of defendants' advice of June 15, 2015, that "Steve Spang (an

Office Specialist II)" worked in the SRCI mailroom during the period when Perez received the

mail and publication violation notices at issue in this action, and that "Mr. Spang is the person

whose name appears on your three relevant publication violation notices," defendants' discovery

response of September 22, 2014, that it would be unduly burdensome to identify SRCI staff

working in the mailroom during the material time period and defendants' discovery response of

November 25, 2014, that no employee designated as SPANGS was employed by SRCI were

necessarily in bad faith and therefore sanctionable.  In addition, Perez argues by and through his

Rule 26(g)(3) motion that defendants' failure to produce the Publication Violation List prior to

my May 27, 2015, disposition of his motions to compel was in sanctionable bad faith.  In

connection with his motion for Rule26(g)(3) sanctions, Perez seeks monetary sanctions in the

amount of $100 reflecting his purported "costs and expenses," as well as such further sanctions

as the court deems appropriate.  Defendants oppose Perez' Rule 26(g)(3) motion on the express

ground that to grant the motion would be to sanction defendants for their compliance with my

disposition of May 27, 2015, and on the implied ground that Perez' Rule 26(g)(3) motion is a *de

facto* improper motion for reconsideration of my May 27, 2015, denial of his previous requests

for discovery sanctions.

Defendants' conduct in connection with the actions identified by Perez as potentially

Page 21 - OPINION AND ORDER

sanctionable, particularly the conduct of defendants and/or their counsel in connection with the

controversy over the identity of the SRCI staff member who issued the three Publication

Violation Notices of September 6, 9, and 12, 2013, is deeply troubling. It is difficult to

understand, in light of the fact that SRCI at all material times employed Steve Spang as an Office

Specialist II in its mailroom, in light of the fact that defendants could not have been unaware of

their own convention of identifying SRCI staff members by a designation consisting of the staff

member's last name followed by the staff member's first initial, and in light of the fact that Perez

had attached the Publication Violation Notices of September 6, 9, and 12, 2013, each bearing the

indication that it had been issued by staff member "SPANGS," as exhibits to both his original

and his amended complaint, how defendants could have advised Perez in discovery on November

25, 2014, that SRCI did not employ any staff member named "SPANGS" had defense counsel

first conducted "reasonable inquiry" regarding the matter as mandated by Federal Civil Procedure

Rule 26(g)(1). The same is true of defendants' advice to Perez in discovery of June 15, 2015, that

Spang was the employee whose name appeared on the publication violation notices of September

6, 9, and 12, 2013, and of defendants' simultaneous proffer of Cook's declaration testimony (*see*

Cook Decl. I) that the versions of the publication violation notices produced by defendants to

Perez in discovery had issued to Perez in connection with the mail rejections of September 6, 9,

and 12, 2013. Moreover, it is difficult to understand, in light of those same facts – and,

additionally, in light of the fact that defendant Shupe must necessarily have been aware of his

own role in issuing the Publication Violation Notices to Perez – how defendants could in good

faith have relied on Cook's patently inaccurate testimony in support of their motion for summary

judgment as to Perez' claims to the extent alleged against Shupe.

Page 22 - OPINION AND ORDER

Even on the assumption that defendants' express reliance on Cook's inaccurate testimony was in good faith, questions would necessarily arise regarding defendants' silence with respect to that reliance between July 29, 2015, when Cook signed a declaration (Cook Decl. II) establishing that his declaration of June 8, 2015 (Cook Decl. I), was without probative value as to the question of Shupe's involvement in the conduct underlying Perez' claims, and August 14, 2015, when defendants opposed Perez' motions for imposition of sanctions on the basis of Cook's July 29, 2015, declaration. Defendants' election to refrain from withdrawing their misplaced argument regarding Shupe's involvement in the complained-of conduct during that period, when it was necessarily manifest to defendants that the argument was spurious, is entirely consistent with the possibility that defendants hoped to derive some benefit from their spurious argument notwithstanding its invalidity.

Questions likewise necessarily arise regarding defendants' good faith in opposing Perez' motion for leave to amend his pleading on August 17, 2015, on the ground that it was at that time too late in these proceedings to permit such amendment. As noted above, Perez sought by and through his motion for leave to amend in significant part to conform his pleading to misinformation provided to him by defendants in discovery on June 15, 2015, and affirmatively withheld from him prior to that date (naturally, as of July 24, 2015, when he filed his motion for leave to amend, Perez was unaware that defendants' discovery responses of June 15, 2015, were false). On the *arguendo* assumption that defendants in good faith mistakenly believed at all times prior to July 29, 2015, that the publication violation notices attached as exhibits to Cook's declaration of June 8, 2015 (Cook Decl. I) were probative as to the question of Shupe's involvement, it is difficult to discern how defendants could in good faith have concealed Spang's

existence from Perez (notwithstanding his discovery requests expressly seeking the identity of

the staff member designated as "SPANGS" and discovery requests seeking the identities of the

small number of staff members assigned to the mailroom during the brief material timeframe)

until June 15, 2015, for the first time reveal Spang's existence to Perez and to the court on that

date, simultaneously moving for summary judgment on the basis of Spang's purported

responsibility for the complained-of conduct, and yet take the position that Perez should be

denied the opportunity to conform his pleading to that same late-disclosed information because

he waited too long to file his motion. Defendants' good faith becomes still more difficult to

discern in light of the fact that, as of August 17, 2015, it was necessarily known to defendants

that their advice to Perez, to which he sought to conform his pleading, had been false, such that

defendants might ordinarily have been expected to oppose amendment to name Spang rather than

Shupe as a defendant on the grounds that the proposed amendment would misstate the facts. The

fact that defendants continued to refrain from full disclosure that Shupe was in fact the

appropriate defendant is, again, consistent with the possibility that defendants hoped to derive

improper benefit from their contrary argument notwithstanding its patent invalidity.

Finally, also on August 17, 2015, defendants filed a reply memorandum in support of

their motion for summary judgment. As noted above, the introductory paragraphs of that

memorandum contained the unsupportable assertion that "[d]efendant[] Shupe w[as] not

personally involved in any violation of plaintiff's rights." Notwithstanding that assertion, at page

8 of the reply memorandum defendants for the first time asserted that they were "withdrawing

their 'personal involvement' argument" as to Shupe, not because the evidence clearly established

(as it does) that Shupe was the staff member who issued the Publication Violation Notices at

issue, but rather on the spurious ground that "it is not possible to know with certainty that Steve

Spang re[jected] plaintiff's at-issue publications (although he was the most recent reviewer of the

records as of the date that defendants printed them for this litigation. . .)." Indeed, at the hearing

of November 18, 2015, in connection with Perez' motions for imposition of sanctions, counsel

for defendants initially continued to take the position that there was no way to determine who had

issued the notices, such that it remained possible that Spang had issued them, until I observed on

the record that if an inmate could not rely on the staff member designation appearing on notices

actually issued to the inmate, the implications for the adequacy of the administrative review

process were problematic from a defense perspective. At that point, defense counsel readily

conceded that the evidence was sufficient to establish that Shupe had originally issued each of

the three Publication Violation Notices. Despite counsel's belated concession that Shupe rather

than Spang had all along been the appropriate defendant, defendants' unwillingness at any earlier

time to concede the complete absence of evidence to support its "personal involvement"

argument as to Shupe once again raises questions regarding defendants' good faith.

By contrast, defendants' complained-of conduct in connection with the Publication

Violation List is less troubling. Although the precise timing and course of the material events is

not perfectly clear from the parties' evidentiary proffers, it appears that early in these proceedings

Perez requested in discovery "copies of any written policies, directives, or instructions to mail

staff . . . concerning the processing of inmate mail at SRCI," and that defendants in response

identified the PVL as potentially responsive to that request but refused to produce it to him on the

ground that it was available for his inspection at the SRCI library. It further appears that Perez

made multiple efforts to obtain a copy of the PVL from the SRCI library, largely without success,

Page 25 - OPINION AND ORDER

but that on one occasion he was able to inspect a copy of the list. It further appears that the copy

of the list made temporarily available to Perez at the SRCI library was, at that time unbeknownst

to Perez, an incomplete copy; specifically, the list, which was organized in a tabular format, was

missing entire columns of information in connection with each list item. Perez inquired in

discovery regarding whether a more complete copy of the list existed, and was advised that the

PVL existed in only one version. Believing in consequence of his inspection of the incomplete

list that the PVL would be of limited utility to inmates in navigating ODOC's publication-related

regulations, Perez ceased pursuing the matter until approximately June 2015, when defendants

produced to him a complete copy of the PVL, apparently in response to this court's order of May

27, 2015, directing defendants to produce in discovery "copies of any written policies, directives,

or instructions to mail staff . . . concerning the processing of inmate mail at SRCI." It is now

Perez' position that defendants' belated production of the complete PVL establishes that it was

wrongful for defendants to refuse to produce the list at any earlier stage of these proceedings.

I have no difficulty in finding that defense counsel failed to conduct a reasonable inquiry

as required by Rule 26(g)(1)(B) to determine that defendants' discovery responses of November

25, 2014 (that SRCI did not employ any staff member designated as "SPANGS"), and of June 15,

2015 (that Spang issued the three Publication Violation Notices of September 6, 9, and 12,

2013), were consistent with applicable discovery rules, and that such failure may appropriately be

sanctioned under Rule 26(g)(3). *See* Fed. R. Civ. P. 26(g). Had an appropriate and reasonable

inquiry taken place as required, defense counsel would necessarily have understood both that

SRCI employed Spang and that it was Shupe rather than Spang who issued the three Publication

Violation Notices to Perez. However, it is not clear that defense counsel failed to conduct the

Page 26 - OPINION AND ORDER

required reasonable inquiry in connection with defendants' responses to Perez' inquiries regarding the PVL, in that it appears to have been accurate that a version of the PVL was in fact available for Perez' inspection at the SRCI library. Moreover, it further appears that once defendants were aware that Perez had not been successful in inspecting a complete copy of the PVL they produced one to him in discovery without need for further court intervention. I therefore find that Perez' Rule 26(g)(3) motion is well taken as to defendants' discovery responses of November 25, 2014, and June 15, 2015, but not otherwise.

A closer question is raised regarding imposition of sanctions pursuant to Rule 56(h) and/or the court's inherent power in connection with defendants' conduct in filing Cook's inaccurate declaration dated June 8, 2015 (Cook Decl. I), in relying on that declaration in support of an invalid summary judgment argument, in failing to withdraw the invalid argument immediately upon learning on or before July 29, 2015, that the supporting declaration was unequivocally inaccurate, and in thereafter maintaining the appearance of evidentiary support for the invalid argument where no such evidence existed. A similarly close question is raised in connection with defendants' conduct in opposing Perez' motion for leave to amend on grounds of the lateness of the proceedings, when the motion for leave to amend was filed in large part so that Perez could conform his pleading to purported evidence proffered by defendants for the first time on June 15, 2015, the same day that they filed for summary judgment in partial reliance on that same purported evidence. As noted above, a finding of subjective bad faith is required before the court may impose sanctions pursuant to either Rule 56(h) or the court's inherent power, although the standard for what constitutes bad faith may be less stringent in connection with sanctions pursuant to the court's inherent power. *See* Fed. R. Civ. P. 56(h); *Stoneberger*, 805 F.2d at 1393;

*Fink*, 239 F.3d at 993.

In light of the discussion taking place at the hearing of November 18, 2015, in particular defense counsel's repeated assertions that although she erred in proffering Cook's declaration dated June 8, 2015, in support of the proposition that the versions of the publication violation notices attached thereto were true and correct copies of the notices that actually issued to Perez on September 6, 9, and 12, 2013, she did so in good faith and for no improper purpose, I do not find that defendants or their counsel acted with bad faith in connection with defendants' June 15, 2015, proffer of Cook's declaration dated June 8, 2015. For that reason, I impose no sanction against defendants or their counsel pursuant to Rule 56(h).

However, even on the assumption that defense counsel's initial error in proffering Cook's declaration dated June 8, 2015, was entirely free of bad faith, counsel's election (or that of her clients) to rely on that declaration in support of the patently invalid (and therefore frivolous) argument that Shupe had had no involvement in the complained-of conduct was at best reckless. The same is true, at best, of the decision not to withdraw that argument immediately upon learning that it was void of evidentiary support and of the decision to oppose Perez' motion for leave to amend on grounds of the lateness of the proceedings notwithstanding defendants' own responsibility for ensuring that the motion could not have been filed at any appreciably earlier time. Such recklessness in connection with offering or defending a frivolous argument warrants a finding of subjective bad faith for purposes of imposition of inherent-power sanctions. *See Fink*, 239 F.3d at 993. I therefore find that the foredescribed conduct warrants imposition of sanctions pursuant to the court's inherent power.

For the foregoing reasons, each of Perez' motions (#103, 104) for imposition of sanctions

is granted, and monetary sanctions[7] are imposed against defendants and/or defense counsel[8] pursuant to Federal Civil Procedure Rule 26(g)(3) and the court's inherent power in the total amount of $200 (the amount requested by Perez). I have no doubt but that the amount of such sanction would be significantly greater if Perez were a represented party who had incurred attorney fees in order to bring his motions, and I note the possibility that some or all of defendants' sanctionable conduct might have gone unremarked had it not been for Perez' diligence in litigating this matter. Should defendants or their counsel engage in further conduct of a similar nature to the conduct found sanctionable herein I will not hesitate to order the imposition of additional sanctions as appropriate under the circumstances.

II.    **Perez' Motion (#90) for Leave to Substitute a Party; Perez' Motion (#91) for Leave to Amend his Pleading; Perez' Motion (#102) for Leave to Amend his Pleading**

As a preliminary matter, I note that, by and through his memorandum (#105) filed July 24, 2015, Perez expressly indicated his intent to withdraw his motion (#91) for leave to amend his pleading filed June 18, 2015, explaining that he intended his motion (#102) for leave to amend his pleading filed July 24, 2015, to supercede the motion of June 18, 2015. Accordingly, Perez' motion (#91) for leave to amend his pleading, filed June 18, 2015, is denied as moot.

By and through his motion (#90) to substitute a party, Perez seeks leave to add Kelly

---

[7] Because, as noted above, defendants stipulated in the course of the hearing of November 18, 2015, that they would consent to permit amendment of Perez' complaint, and because it appears that the parties now agree as to the material facts underlying Perez' claims, I do not find that it would be appropriate to impose evidentiary or other non-monetary sanctions at this time.

[8] Although, as noted above, at the hearing of November 18, 2015, defense counsel asserted to the court that she alone rather than her clients was responsible for any potentially sanctionable conduct, I make no finding regarding whether the requested sanctions should be borne by defendants, by their counsel, or by defendants and their counsel jointly.

Raths, the central mail administrator at SRCI who has served in that position since the March

2014 retirement of Randy Geer, as a defendant in this action. Specifically, Perez seeks to name

Raths as a defendant in her official capacity, and to retain Geer as a defendant in his personal

capacity only. Perez asserts in support of his motion that effecting the substitution would not

necessitate any further or additional discovery beyond that which the parties have already

exchanged. Defendants initially opposed Perez' motion on the sole ground that it would be

prejudicial to permit Perez to amend his pleading at this late stage of these proceedings, after the

close of the discovery deadline; however, in light of defendants' stipulation of November 18,

2015, that Perez should be permitted to amend his complaint, defendants appear to have tacitly

withdrawn their opposition to Perez' motion to substitute a party.

By and through his motion (#102) for leave to amend his pleading filed July 24, 2015,

Perez seeks leave to amend his pleading (i) to add Raths as a defendant in her official capacity

and to clarify that Geer is named as a defendant in his personal capacity only, (ii) to add Spang as

a defendant in both his official and his personal capacities, (iii) to add an allegation that

defendants Geer and Nooth failed properly to train and supervise SRCI mailroom staff, and

(iv) to add additional allegations regarding defendants' maintenance of the Publication Violation

List in support of his Fourteenth Amendment claim. Defendants initially opposed Perez' motion

for leave to amend his pleading on the ground that the amendment purportedly would introduce

"separate, distinct, and new causes of action to this case," on the ground that it would be

prejudicial to permit Perez to amend his pleading at this late stage of these proceedings, on the

ground that the proposed second amended complaint contains facial challenges to ODOC

regulations that have already been dismissed, and on the ground that the motion constitutes an

Page 30 - OPINION AND ORDER

improper motion for reconsideration of my disposition of May 27, 2015. However (as noted above), at the hearing of November 18, 2015, defense counsel expressly indicated defendants' willingness to stipulate that Perez be permitted to amend his complaint.

Because it appears to be undisputed that defendant Geer retired from his position as SRCI's mailroom administrator shortly after this action was filed, and that he was replaced in that position by Raths, no grounds exist for denying Perez' motion (#90) to substitute a party. Accordingly, the motion for substitution is granted, and Rath is substituted in her official capacity for Geer to the extent he is sued in his official capacity only.

Although defendants have stipulated to permit Perez to amend his complaint, as noted above, Perez seeks leave *inter alia* to add Spang as a defendant in lieu of Shupe in both his official and his personal capacities, and as discussed above Perez' claims are in fact appropriately alleged against Shupe rather than Spang. Perez' motion (#102) for leave to amend is therefore granted, but only for the purposes of (i) adding Raths as a defendant in her official capacity and clarifying that Geer is named as a defendant in his personal capacity only, (ii) adding allegations that defendants Geer, Rath, and Nooth failed properly to train and supervise SRCI mailroom staff, and (iii) adding allegations regarding defendants' maintenance of the Publication Violation List in support of the Fourteenth Amendment claim. Perez is directed to file his amended complaint within thirty days of the date hereof.

### III.   Perez' Motion (#108) for Reconsideration

By and through his motion (#108) for reconsideration, Perez seeks reconsideration of my May 27, 2015, rulings (i) denying Perez leave to amend his complaint to add allegations regarding defendants' maintenance of the PVL, (ii) dismissing Perez' facial challenge to O.A.R.

291-131-0015(2), (iii) dismissing Perez' facial challenge to O.A.R. 291-131-0035(1), and

(iv) denying Perez' motion (#53) to compel as to his interrogatory request regarding successful

completion of the administrative review process.  Defendants oppose Perez' motion for

reconsideration on the purported grounds that Perez has not identified any error of law in any of

the rulings, that Perez has not identified any "legitimate mistake, inadvertence, surprise, or

excusable neglect" in his briefing in connection with the issued addressed in my May 27, 2015,

order, that Perez has identified no newly discovered facts, and that Perez has not identified any

"fraud, misrepresentation, or misconduct" by defendants or their counsel.

As to Perez' request for reconsideration of my ruling denying him leave to amend his

complaint to add allegations regarding defendants' maintenance of the PVL, as noted above

defendants have stipulated to permit such amendment, and in light of that stipulation I have

granted the motion for leave to amend as to the PVL issue.  In consequence, Perez' first request

for reconsideration is now moot.

As to Perez' request for reconsideration of my ruling dismissing his facial challenge to

O.A.R. 291-131-0015(2), I note that Rule 291-131-0015(2) provides that ODOC inmates are

prohibited from sending, receiving, transferring, or possessing mail which violates the provisions

of the rules set forth in Division 131 of Chapter 291 of the Oregon Administrative Rules.  *See*

O.A.R. 291-131-0015(2).  It is Perez' specific position that Rule 291-131-0015(2) is facially

overbroad to the extent it prohibits inmates from sending mail with sexually explicit content to

correspondents outside of any ODOC institution.  Perez argues that to the extent ODOC seeks to

regulate the contents of *outgoing* institutional mail, no such regulation can further any legitimate

governmental interest in institutional security and good order or in inmate rehabilitation, and

therefore cannot survive a facial constitutional challenge.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  However, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is [nevertheless] valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987)  In *Turner*, the United States Supreme Court set forth four factors that the courts must balance in determining the reasonable relation issue:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3) Whether accommodation of the asserted constitutional right will impact guards and other inmates, and on the allocation of prison resources generally; and
>
> (4) Whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.

*Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (internal modifications, quotation marks omitted); *quoting Turner*, 482 U.S. at 89-90, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).

Prohibitions preventing inmates from possessing sexually explicit materials routinely pass constitutional muster. *See, e.g., Mauro v. Arpaio*, 188 F.3d 1054, 1058-1063 (9th Cir. 1999) (*en banc*).  Although I entirely agree with Perez that the penological interest in preventing the expression of inmates' sexually explicit speech to non-inmate correspondents is weak by comparison with the interest in regulating inmate access to materials that might reasonably

present a threat to security or order within an institution – and moreover that in the case of

outgoing correspondence the free speech rights of non-prisoners are as much at issue as those of

the inmates with whom such correspondence originates – I nevertheless reaffirm my previous

finding that the regulation at issue here likewise survives facial constitutional challenge.  The

ostensible purposes of Rule 291-131-0015(2) are to maintain prison security and to promote

inmate rehabilitation.  "It is beyond question that both . . . security and rehabilitation are

legitimate penological interests." *Mauro*, 188 F.3d at 1059 (and cases cited therein).  Moreover,

bans of sexually explicit material, which are enacted due to their potential implications for prison

security, are "neutral" for First Amendment purposes and "rationally related" to the objectives of

maintaining security and promoting rehabilitation.  *Id.* at 1059, 1060.  As such, the first *Turner*

factor mitigates in favor of the constitutionality of the prohibition at issue here.

Regarding the second *Turner* factor, the courts of the Ninth Circuit are instructed to "be

particularly conscious of the measure of judicial deference owed to corrections officials" in

determining the availability of alternative avenues of expression.  *See id.* at 1061 (internal

quotation marks omitted), *quoting Turner*, 482 U.S. at 90.  In light of that measure of deference, I

find that the right herein at issue is the right of inmates to express sexually explicit ideas to non-

prisoners, and that ODOC prisoners are not banned from telephonic communication of such ideas

to persons outside the prison setting.  As such, alternative avenues of expression are available to

prisoners, *see id.* (and cases cited therein), and the second factor likewise mitigates in favor of

the facial constitutionality of Rule 291-131-0015(2).

Regarding the third *Turner* factor, impact on other inmates, on prison guards, and on

allocation of institutional resources, it appears clear on the one hand that to permit inmates to

Page 34 - OPINION AND ORDER

possess sexually explicit materials generally could lead to illicit bartering of such materials and possibly to violent interactions between inmates, *see id.* at 1060 n.4, 1061-1062, and on the other hand that to permit inmates to draft sexually explicit texts solely for the purpose of outgoing correspondence would present a near insurmountable enforcement problem for ODOC institutions, in that the distinctions between sexually explicit texts intended for outgoing correspondence and those intended for barter would not by their nature be immediately obvious to institutional correctional officers. The third factor therefore likewise mitigates in favor of the facial constitutionality of Rule 291-131-0015(2).

Regarding the fourth *Turner* factor, the availability of alternative rules that would not infringe the constitutional right at issue, Perez argues that ODOC could lift its ban on possession of sexually explicit materials in connection with outgoing mail only. Again, while I am sympathetic to Perez' position that there is little legitimate penological interest in regulating the content of outgoing mail, as noted above there is no practical way to enforce a policy that would prohibits inmate possession of sexually explicit texts in general (possession of unauthorized sexually explicit material currently constitutes "Contraband II" under O.A.R. 291-105-0015) but would permit inmates to possess such texts for purposes of outgoing mail only, without imposing significant burdens on ODOC institutions. In consequence, the fourth factor therefore likewise mitigates in favor of the facial constitutionality of Rule 291-131-0015(2). I therefore conclude on reconsideration that Rule 291-131-0015(2) is not facially unconstitutional.

As to Perez' request for reconsideration of my ruling dismissing his facial challenge to O.A.R. 291-131-0035(1), I note that Perez acknowledges that the Ninth Circuit found Rule 291-131-0035(1) facially constitutional in *Bahrampour v. Lampert*, 356 F3d 969, 973-976 (9th Cir.

2004), but argues that the findings of *Bahrampour* do not require this court to reach the same conclusion, because the *Bahrampour* court did not consider the distinction, which forms the crux of Perez' challenge herein, between portrayals of sexual conduct in *images* and portrayals of sexual conduct in *prose*. However, in my order of May 27, 2015, I expressly noted that in *Chandler v. Williams*, Case No. CV-08-962, 2010 U.S. Dist. LEXIS 141934, *19-21 (D. Or. Dec. 21, 2010), Judge Stewart found that the *Bahrampour* analysis applied with equal force to graphic and to textual portrayals of sexual conduct. In consequence, Perez' arguments do not constitute grounds for reconsideration of my prior disposition of his facial challenge to Rule 291-131-0035(1).

Finally, as to Perez' request for reconsideration of my ruling denying his motion (#53) to compel as to his interrogatory request regarding successful completion of the administrative review process, I agree with the defendants that Perez' query regarding whether any inmate has ever succeeded in obtaining a reversal of a publication violation notice or of a mail violation notice is not calculated to lead to the production of admissible evidence. It is entirely immaterial to Perez' claims in this action whether any other inmate ever successfully completed the administrative review process. The matter at issue here is whether defendants violated Perez' constitutional rights, including his right to due process as well as his free speech rights, through the conduct complained of herein. No grounds exist for reversing my previous disposition as to Perez' interrogatory regarding successful completion of the administrative process.

## CONCLUSION

For the reasons set forth above, Perez' motion (#90) for leave to substitute a party is granted, Perez' motion (#91) for leave to amend his pleading is denied as moot, Perez' motion

(#102) for leave to amend is granted as discussed above and Perez is directed to file his amended complaint within thirty days of the date hereof, Perez' motion (#103) for imposition of sanctions pursuant to Federal Civil Procedure Rule 56(h) is granted as discussed above, Perez' motion (#104) for imposition of sanctions pursuant to Federal Civil Procedure Rule 26(g)(3) is granted as discussed above, Perez' motion (#108) for reconsideration is denied in part as moot and in remaining part on its merits, and monetary sanctions are imposed against defendants and/or their counsel pursuant to Rule 26(g)(3) and the court's inherent power in the total amount of $200.

Additionally, the parties are directed to advise the court in writing as soon as may be practical and in any event within ten days of the date hereof as to whether, in light of this court's order granting Perez leave to amend his pleading as discussed above, each party or set of parties believes that it would be appropriate for the court to decide the parties' pending cross-motions (#87, 101) for summary judgment on the basis of the materials already filed with the court, or in the alternative to grant the parties an opportunity to supplement their briefing before deciding the motions, or in the further alternative to permit the parties to withdraw the motions with leave to refile after Perez files his amended complaint.

DATED this 5th day of January, 2016.

Honorable Paul Papak
United States District Judge

Page 37 - OPINION AND ORDER